Jack HARVILL, Appellee,

v.

ROADWAY EXPRESS, INC., Appellant.

No. 80–1399.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 12, 1981.

Decided Feb. 11, 1981.

H. Kent Munson, St. Louis, Mo., for appellant.

Marc S. Kramer, St. Louis, Mo., for appellee.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

ARNOLD, Circuit Judge.

Roadway Express, Inc., appeals a judgment enforcing an arbitration award under 29 U.S.C. § 185. The district court seemingly interpreted the award as requiring Roadway to permit appellee Jack Harvill to drive within the St. Louis metropolitan area despite his failure to meet Roadway's physical requirements. It found that appellee Jack Harvill was physically capable of performing as an intracity driver for Roadway and granted back pay. Roadway argues that the district court's construction of the award is erroneous. We agree and reverse, 490 F.Supp. 797.

Roadway is an "over-the-road" motor carrier engaged in interstate commerce and maintains a terminal in St. Louis, Missouri. Its operation in the St. Louis area requires that Roadway employ drivers who perform local pickup and delivery functions. These employees are called "city drivers."[1] Roadway also maintains on the city-driver seniority roster a certain number of drivers who do not drive trucks on the street but instead perform switching duties within the carrier's terminal yard.

In January, 1976, Roadway purchased Owens Transfer, Inc. The city drivers who worked for Owens Transfer were dovetailed

---

1. Drivers who deliver freight interstate are called "over-the-road" drivers.

into the seniority roster of city drivers employed by Roadway. Among those drivers was appellee Harvill, who had been a city driver for Owens Transfer for eight years. Harvill, however, had never driven placarded loads in excess of the weight limitations fixed by the Department of Transportation (DOT) regulations, 49 C.F.R. § 390.16,[2] nor driven outside of the commercial zone of the St. Louis metropolitan area as defined by the Interstate Commerce Commission, 49 C.F.R. § 1048.

When Roadway purchased Owens Transfer, it required that all of the former Owens Transfer drivers be examined to determine whether they met Roadway's physical qualifications for city drivers. These qualifications were the same as those specified by the Department of Transportation for "over-the-road" drivers. See 49 C.F.R. §§ 391.41–.47. The difference is that Roadway requires all drivers to meet these qualifications, whereas DOT imposes these physical requirements only on over-the-road drivers and nonexempt city drivers. See n.2 *supra*.

Harvill was examined on January 15, 1976, by Dr. J.A. Costrino, who found that Harvill had severely impaired vision in his right eye and therefore did not meet DOT's physical requirements for drivers.[3] Because of this determination, Harvill has been employed by Roadway only in its terminal yard performing switching operations.

Harvill's employment at Roadway is governed by a collective bargaining agreement between the company and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 600. The agreement, entitled National Master Freight Agreement and Central States Area Local Cartage Supplemental Agreement, does not expressly limit Roadway in establishing physical qualifications for either its over-the-road or city drivers.

Pursuant to the grievance procedure contained in the collective bargaining agreement, Harvill filed, on January 20, 1976, a grievance claiming that Roadway violated Article 43 of the agreement by removing him from the seniority list as a city driver and refusing to accept his bids for on-the-street driving positions. The grievance was initially heard by the Joint Local Area Committee, which subsequently referred it to the Joint Area Cartage Committee (J.A.C.).[4] On April 21, 1976, the J.A.C. heard the grievance and, according to the transcript of the proceedings, ruled that "Harvill be allowed to bid on positions that he is physically qualified to perform." No opinion or explanation accompanied the arbitration award. The J.A.C. did not explain whether

2. Section 390.16 of 49 C.F.R., in part, states: "The term 'exempt intracity operation' means a vehicle or driver used wholly within a municipality, or the commercial zone thereof, as defined by the Interstate Commerce Commission in Part 1048 of 49 CFR Parts 1000 to 1199, revised as of October 1, 1975, and transporting—

(a) Passengers or property, or both, for which no placard or other special marking is required under § 177.823 of this title; or

(b) Property consisting of hazardous materials of a type and quantity that require the vehicle to be marked or placarded under § 177.823 of this title and that weigh less than 2,500 pounds, in the case of one dangerous article, or less than 5,000 pounds, in the case of more than one dangerous article."

Owens permitted Harvill to participate in exempt intracity operations.

3. Section 391.41 of 49 C.F.R. states that a person is physically qualified to drive a motor vehicle if, among other things, that person—

"has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70° in the horizontal Meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber;"

It was found that Harvill could see only light and dark through his right eye. Dr. Costrino diagnosed this condition as external strabismus.

4. The Joint Local Area Committee actually disposed of the grievance by ruling in the following manner:

"Based on the facts as presented, Jack Harvel [sic] is returned to work, and limited to spotting in the yard, subject to Local 600 and the Company requesting interpretation [from] the Joint Area Committee of this case."

its reference to physical qualifications meant the qualifications established by Roadway, under which Harvill could not drive on the street at all, or the qualifications established by DOT, under which Harvill could drive on the street with exempt loads.

Roadway interpreted this Delphic utterance as restricting Harvill to bidding on positions for which he qualified physically under the standards set by Roadway for its city drivers. The company thereafter continued to restrict Harvill to positions in its terminal yard. Harvill filed another grievance, and on October 7, 1976, the Missouri-Kansas Joint State Grievance Committee rendered a decision identical to the first determination,[5] apparently upholding the company's position. Roadway again refused to accept Harvill's bids for on the street driver positions. A third grievance was referred back to the parties by the J.A.C., apparently because of its feeling that the previous rulings were in favor of the company and were controlling.

The only issue in this case is the meaning of the arbitration award. Although the district court made no express finding on this issue, we may infer from its decision that the lower court interpreted the award as permitting Harvill to bid on city-driver positions. We respectfully disagree and hold that the evidence in the record requires a different conclusion.

The subsequent actions of the Joint Committees in reaffirming the initial decision of the J.A.C. and the decision of the Missouri-Kansas Joint State Committee on the grievance of Richard Hendrixson[6] convince us that the arbitration award must be interpreted as permitting Jack Harvill to bid only on those positions that he was physically qualified to perform under the qualifications standard set by Roadway. There is no substantial evidence to support any other construction of the award.

■ The duty of a court is to enforce an arbitration award unless there are significant reasons to the contrary. See *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). We emphasize that a court has no business weighing the merits of a grievance. *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). As the Supreme Court stated in *American Mfg. Co.*, *supra*, "[w]hen the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." 363 U.S. at 569, 80 S.Ct. 1343, 4 L.Ed.2d 1403.

■ The present controversy could have been avoided if the arbitration tribunal in this case, the Joint Area Committee, has been less ambiguous in its first award. The Joint Committees are quasi-judicial bodies with the duty to provide reasons for their decisions. A brief explanation accompanying the arbitration award would have eliminated much confusion and avoided the need for litigating the issue of interpretation of the award. Joint Committees have a duty to apply their own precedents evenhandedly and to give reasons clearly, if

---

5. Article 45, Section 1(a) of the collective bargaining agreement provides, in pertinent part, that "[w]here the Joint Area Committee by majority vote settles a dispute such decision shall be final and binding on both parties with no further appeal."

6. Richard Hendrixson was a Roadway driver afflicted with a vision problem similar to that of appellee. He filed a grievance after Roadway disqualified him as a city driver. The J.A.C. ruled that, consistent with prior J.A.C. decisions, Hendrixson was restricted to spotting work in the terminal yard only, according to his seniority. Harvill complains that the record contains no document actually embodying the Committee's decision, but only an internal company memorandum recording what the Committee had said. It was open to Harvill to offer evidence to show that the company memorandum was in error. He did not do so. In addition, Hendrixson testified at the trial and agreed that his grievance had been rejected. Tr. 72.

briefly, justifying their decisions. Ordinarily a suit to enforce an unclear award should be remanded to the grievance tribunal for clarification. In this case, however, there is no need thus to put the parties to the expense and burden of further litigation. Later actions of the grievance tribunals in the Harvill and Hendrixson cases make clear that the initial award, which Harvill sued to enforce, was intended to uphold the position of Roadway.

The judgment is reversed, and the cause remanded with instructions to dismiss the complaint.