John EARLY, et al., Plaintiffs, Appellants,

v.

EASTERN TRANSFER, et al., Defendants, Appellees.

No. 82–1217.

United States Court of Appeals, First Circuit.

Argued Sept. 14, 1982.

Decided Feb. 1, 1983.

Mark D. Stern, Cambridge, Mass., with whom Goldstein, Pressman, Stern & Hiller, Cambridge, Mass., was on brief, for appellants.

Alan Kaplan, Boston, Mass., with whom Nathan L. Kaitz and Morgan, Brown, Kearns & Joy, Boston, Mass., were on brief, for appellee Eastern Transfer.

Kathryn M. Noonan, Boston, Mass., with whom McDonald & Noonan, Boston, Mass., was on brief, for appellees Local No. 82, Bart Griffiths and George Harris.

Arthur L. Fox, II, and Alan B. Morrison, Washington, D.C., on brief for Teamsters for a Democratic Union, amicus curiae, urging reversal.

Before DAVIS,* CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

John and Stephen Early, father and son, brought this suit in the district court under section 301 of the Labor Management Rela-

* Of the Federal Circuit, sitting by designation.

tions Act, 29 U.S.C. § 185, against their former employer, their union, and two of the union's officers. Asserting breaches of the duty of fair representation by the union and of the collective bargaining agreement by the employer, they challenged a joint committee decision upholding their discharges, and demanded damages, reinstatement, back pay, and attorneys' fees. On cross-motions for summary judgment, the district court found there had been no breach of the duty of fair representation and accordingly entered judgment for all defendants.

The two Earlys, as employees of Eastern Transfer, were working at the Hynes Auditorium in Boston on Saturday, June 6, 1981, setting up a trade show. They left their job in the early evening without express permission of their employer and without completing their assignments. When they reported for work the next morning at 6:00 a.m., they and three other employees who had left with them were discharged. On the day of the discharge, union and company officials met informally, apparently pursuant to steps one and two of the grievance procedure set out in the collective bargaining agreement. The company reduced one employee's penalty to a one-week suspension, but let the discharges of the other four stand. The discharged employees, including the two Earlys, thereupon filed formal grievances.

On July 23, 1981, the grievances were heard by a four-member joint committee.[1] Defendant George Harris, the president of the union local, sat on the committee, and defendant Bart Griffiths represented the grievants. Griffiths made various arguments on their behalf, but did not present that considered by the appellants to be the most compelling, *viz.* that under the collective bargaining agreement employees could leave unfinished work without permission on weekends. John Early made this argument, among others, when reading from a prepared statement; Stephen Early also made a statement on his own behalf. At the close of the hearing, the grievants were asked whether they felt they had been properly represented. All responded affirmatively. The committee upheld the discharges. It did not give any reasons for doing so.

Before the district court, the Earlys contended that Griffiths investigated and argued their grievances perfunctorily, and that the joint committee's decision was tainted by Harris's bias.[2] The district court ruled that plaintiffs in their affidavits and other supporting materials had failed to raise genuine issues of material fact with respect to the union's fair handling of their grievances. While conceding that plaintiffs may have suggested a motive for their union's acting arbitrarily or using less than its best efforts on their behalf, the court concluded that they "offered insufficient evidence of conduct or omissions to support an inference of the union's breach of its statutory duty." The court also rejected any theory that union members on the joint committee owed a duty to deadlock the committee and thereby trigger the next contractual step of arbitration.

In reviewing the district court's grant of summary judgment, we look at the record in the light most favorable to the opposing party and indulge all inferences favorable to that party. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed. 754 (1976). We will uphold the district court if there exists no genuine issue of material fact and the

---

1. The collective bargaining agreement provides that grievances not settled by steps one and two are to be heard by a joint committee consisting of equal numbers of union and employer representatives, with the latter from firms other than the employer against whom the grievance is filed. If the committee deadlocks, the matter proceeds to arbitration; otherwise, the committee's decision is "final and binding on the parties."

2. The other union representative on the committee was Stephen Cullen, from the Eastern Conference of Teamsters. Appellants do not suggest any prior hostile dealings with Cullen, although in their affidavits they complain that he took open exception at the hearing to their construction of the contract.

appellees are entitled to judgment as a matter of law. *Condon v. Local 2944, United Steelworkers of America,* 683 F.2d 590, 594 (1st Cir.1982). We conclude that the lower court did not err.

▬ To have a right to contest the merits of their discharge in court, the Earlys must first show that the union violated its duty of fair representation; otherwise the decision of the joint committee is "final and binding." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).[3] This exception to the finality rule is narrow. *Sear v. Cadillac Automobile Co. of Boston,* 654 F.2d 4, 7 (1st Cir.1981). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). "A union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. However, the fact that the grievance was meritorious does not establish a breach of the duty of fair representation or entitle the grievant to escape the bar of finality imposed by the collective bargaining agreement, for "[t]he grievance process cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 571, 96 S.Ct. at 1059. There must be a separate showing of a union breach that "seriously undermined the integrity of the arbitral process." *Id.* at 567, 96 S.Ct. at 1058. Mere negligence of the

union does not amount to such a breach. *Condon v. Local 2944,* 683 F.2d at 594–95. Looking at the materials submitted by the parties in the light most favorable to appellants, we believe that appellants did not make a sufficient showing that the union's treatment of these grievances lay outside "the range of acceptable performance by a collective bargaining agent." *Hines,* 424 U.S. at 568, 96 S.Ct. at 1058.

## I.   *Adequacy of Representation*

The Earlys contend that Griffiths was hostile to them and failed to investigate and present their case adequately. We consider in turn each of these charges.

### A.   Hostility

▬ The Earlys' affidavits indicate that they were actively associated with the dissident Teamsters for a Democratic Union, had openly distributed TDU literature, had spoken out at union meetings against policies and practices espoused by Harris and Griffiths, and had declined to testify for the two in separate litigation brought by members of the local against its officers. While Griffiths denied any hostility, pointing out that the union had supported the appellants in several prior grievances, the Earlys' submissions, viewed most favorably, created an issue of fact at least as to whether Griffiths had reason to be hostile to them. That they also created a triable issue of actual hostility is less clear. Griffiths was not alleged ever to have expressed hostility towards the Earlys.[4] *See Melendy v. United States*

3.  We disagree with appellants insofar as they contend that an employee may ordinarily secure judicial review of the merits of a decision by a joint committee, as opposed to an arbitrator, even if the union did not violate its duty of fair representation. *Hines* itself was a petition for review of a joint committee decision. The Supreme Court treated breach of the duty of fair representation as a prerequisite to review, just as it would be where the challenged decision was made by an arbitrator. *See also United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981) (showing of breach of duty of fair representation "the indispensable prerequisite" to a section 301 action to set aside joint panel award). A joint committee is the grievance mechanism

chosen by the parties in their contract; it is to such voluntarily selected machinery that they must normally look for resolution of disputes. Of course, if the committee itself were tainted by dishonesty or similar impropriety, the situation would be different. *See* Part IIA, *infra.*

4.  The Earlys put forth as evidence of Griffiths's hostility a list drawn up by Griffiths containing 28 names, including that of John Early. Griffiths stated in his deposition that he had been asked to determine the eligibility for union office of this group prior to the November 1980 nomination meeting. The list also included the names of the incumbent officers. We do not see that this evidences actual hostility towards John Early.

*Postal Service,* 589 F.2d 256, 259 & n. 3 (7th Cir.) (upholding grant of summary judgment for defendants), *cert. denied,* 436 U.S. 927, 98 S.Ct. 2821, 56 L.Ed.2d 770 (1978). But even assuming, without deciding, that animosity on Griffiths's part could be inferred from the Earlys' provocations, this would not, standing alone, establish a breach of the duty of fair representation. *E.g., Freeman v. O'Neal Steel, Inc.,* 609 F.2d 1123, 1127 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980); *Hardee v. North Carolina Allstate Services, Inc.,* 537 F.2d 1255, 1258 (4th Cir. 1976). To establish such a breach it must be shown that his handling of the grievances was itself materially deficient. We now turn to that issue.

### B. Investigation of the Grievances

■ The Earlys assert that the materials they submitted demonstrate that Griffiths's investigation was perfunctory and undertaken in bad faith. They say that in conversations with them he voiced disbelief in the merits of their claim and suggested they lie rather than assert allegedly sound defenses, and that he did nothing to prepare their case. The undisputed facts establish, however, that Griffiths spoke with the grievants and company officials on the day of discharge (he was at Eastern Transfer at 6:00 a.m. to do so) and discussed the case with John Early on at least two occasions thereafter. The case was not factually complex: the Earlys did not specify in their affidavits any positive facts of significance which a more thorough investigation would have brought to light. Griffiths arranged that the time cards, which Early had unsuccessfully sought himself, be brought to the hearing, where he and Early examined

them and introduced them into evidence.[5] John Early asserted that he had had trouble reaching Griffiths, who had not returned his phone calls. But in the absence of some specific indication of why further consultations were needed or how they could have helped, we can find no genuine issue concerning unfair representation due to inadequate investigation. *See Findley v. Jones Motor Freight, Inc.,* 639 F.2d 953, 959 (3d Cir.1981) (reversing jury's finding that union breached its duty).

### C. Presentation to the Committee

■ According to appellants, at the hearing Griffiths presented only four out of their eleven arguments, and even these were presented halfheartedly. Nonetheless, it is undisputed that Griffiths argued that other employees had walked off the job the same day without permission and had not been fired; that employees had walked off other jobs without permission and had not been fired; that company agents had been present when the grievants left and did not fire them; that John Early had been sick when he left work; and that it had been discriminatory to fire grievants when the fifth employee had only been suspended for the same offense. He also objected to the introduction of certain evidence, questioned company witnesses, and allowed the grievants to make their own statements. This is more than a perfunctory performance. *Cf. Milstead v. Teamsters Local 957,* 580 F.2d 232 (6th Cir.1978) (handling of grievance was perfunctory where union representative before joint committee was unaware of critical fact in support of grievant's claim). Something more than claims of the absence of forensic skill, or a lackluster perform-

---

5. While the Earlys complain that Griffiths should have obtained these before the hearing, so that other employees who left earlier could be identified and possibly called as witnesses, there is nothing to suggest that the time cards did, in fact, contain any useful leads. If the cards had revealed the names of favorable witnesses, the Earlys and their counsel could certainly have discovered this by the time of the district court proceedings, and named such witnesses and described their expected testimony in a supporting affidavit. At the hearing before

the joint committee, Mr. Epstein, the employer's representative, said that two men had left early, but that both had completed their assignments and received permission. Griffiths stated in his deposition that John Early told him that others who left early would not back the grievants but instead would say they had permission to leave. Griffiths also deposed, without contradiction, that Early had told him he would talk to his fellow employees and obtain witnesses.

ance, are required to create a material issue of fact concerning unfair representation. "The union representative is not a lawyer and he cannot be expected to function as one." *Freeman v. O'Neal Steel, Inc.*, 609 F.2d at 1127. Insofar as appears, all the relevant facts and arguments concerning the grievances were placed before the committee.

■ Appellants' primary objection seems to be that Griffiths did not argue that under the collective bargaining agreement employees could walk off the job on weekends at any time, at least after having done a reasonable amount of work, without permission. The union did not share this interpretation; the district court rejected it; and we also see little support for it in the language of the contract.[6] Griffiths was entitled to decline to put forward an interpretation of the collective bargaining agreement which he and his union reasonably believed was incorrect. *See Findley v. Jones Motor Freight, Inc.*, 639 F.2d at 960; *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 294 (7th Cir.1975). Especially was such a position supportable where John Early himself could and did make this argument to the committee.

Appellants' claim of inadequate representation is further weakened by other undisputed facts. First, at the conclusion of the hearing they expressly stated that they had been properly represented. *See Hardee v. North Carolina Allstate Services, Inc.*, 537 F.2d at 1259. Second, Griffiths had proc-

essed four other grievances for one or both Earlys, apparently without incident or allegations of mishandling. Third, to sustain appellants, it would be necessary to believe that Griffiths was willing deliberately to sacrifice the other two grievants in order to give vent to his hostility towards the Earlys.

If unfair representation could be made out simply by plaintiffs' after-the-fact generalities, almost any grievance would become judicially reviewable. We think that the district court properly ruled on this record that plaintiffs had failed to demonstrate the existence of a material issue of fact with regard to whether Griffiths's conduct amounted to unfair representation.

## II. *The Joint Committee*

The Earlys also challenge the fairness and legality of the joint committee proceeding itself. They charge that Harris, the president of the local who sat on the committee, was biased like Griffiths on account of their prior activities. They also say the union representatives on the joint committee violated their duty of fair representation by failing to support the Earlys' position. Had they done so, they might at least have deadlocked the committee and forced the matter to arbitration. *See* note 1, *supra*. Finally, the Earlys contend that the joint committee's decision was invalid because unaccompanied by a statement of reasons.

---

**6.** The argument runs as follows. The agreement provides that "[e]mployees who are assigned work during the standard work week which involves overtime work, shall complete all such work assignments unless excused by the Employer." As the "standard work week" is defined as Monday through Friday, this language could support a negative inference that overtime work on Saturday need *not* be completed.

However, the agreement goes on to provide that "[a]ll work performed on Saturday, Sunday or a holiday shall be compensated for at time and one-half the straight-time rate of pay with a guarantee of four (4) hours. Overtime is a required condition of employment and shall not exceed 1:00 A.M. unless mutually agreed upon ...." While employees can indicate a

preference not to work overtime on a Saturday, they may nonetheless be assigned to do such work if needed. Appellants' interpretation would lead to the anomalous result that although overtime is required and although an employee is apparently guaranteed four hours of pay, he could leave whenever he wished. Furthermore, not only could the employer not make an employee stay after 1:00 a.m., it could not make him stay *until* 1:00 a.m. either. It seems most likely that the requirement of completing assignments was spelled out only with regard to the standard work week not because the requirement applied only then but because that was the only time during which it might have been thought that the requirement did not apply.

## A. Harris's Bias

Appellants insist, see below, that judicial deference to a joint committee's decision should not approach that due an arbitrator's. Nonetheless, appellants correctly point out that even an arbitrator's decision will be disregarded by a court on a showing of "fraud or bad faith or demonstrated bias or collusion." *Morris v. Werner-Continental, Inc.,* 466 F.2d 1185, 1190 (6th Cir.1972) (stating that this standard applies to arbitrators and joint committees alike), *cert. denied,* 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973). Similarly, they say, joint committee decisions should at least be ignored if shown to be tainted by fraud, bad faith or bias. *See Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1275, 1278 n. 12 (11th Cir.1982); *Herman Brothers, Inc. v. NLRB,* 658 F.2d 201, 207 (3d Cir.1981); *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167, 171 (5th Cir.1971); *Bielski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32 (3d Cir.1968).

On the above reasoning, the Earlys claim to have made a sufficient showing of Harris's personal bias to warrant a trial concerning the fairness of the joint committee proceeding. We disagree.

█ The critical weakness in this contention is the Earlys' failure to have raised the issue of Harris's purported bias before the joint committee. In the absence of exceptional circumstances, we will not entertain a claim of personal bias where it could have been but was not raised at the hearing to which it applies. This is the accepted rule in arbitration cases. *See Amalgamated Meat Cutters v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 & n. 19 (3d Cir.1975); *Morris v. Werner-Continental, Inc.,* 466 F.2d at 1189; *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–08 (2d Cir.1971), *cert. denied,* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *Graphic Arts International Union v.*

*Haddon Craftsmen, Inc.,* 489 F.Supp. 1088, 1093 (M.D.Pa.1979). Harris had sat on the committees that heard the Earlys' earlier grievances. All the facts now argued as to Harris's alleged bias were known to the Earlys at the time the joint committee heard their grievances. Had the Earlys objected, Harris might have withdrawn in favor of some other union official. While it may be unpleasant to have to choose between possibly alienating a decisionmaker in advance by objecting and waiving the issue of bias, we cannot accept that parties have a right to keep two strings to their bow—to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed.

The Third Circuit recently considered almost the same problem in *United Steelworkers of America v. Union Railroad Co.,* 648 F.2d 905 (3d Cir.1981). There a discharged employee had his grievance taken before a Public Board composed of a union member, an employer representative, and a neutral. The Board upheld the discharge, and in the aftermath the employee made various assertions of personal hostility between himself and the union representative. The court noted that it might set aside the board's decision if it was shown that these personal conflicts caused the member to act fraudulently or corruptly; but that any objection had been waived by failure to make it initially. "When the reasons supporting an objection are known beforehand, a party may not wait to make an objection to the qualifications of a Board member until after an unfavorable award has been made." *Id.* at 913.[7]

█ To be sure, there might conceivably be cases of fraud so egregious that the failure of an employee to object should be overlooked. It was not shown that this is such a case, however. The committee's decision was reasonable on its face. Appellants have done little more than suggest

7. At oral argument, appellants' counsel referred us to *Kirkland v. Arkansas-Best Freight System, Inc.,* 475 F.Supp. 180, 190 (E.D.Ark. 1978), *rev'd in part on other grounds,* 629 F.2d 538 (8th Cir.1980). Though that case did involve a joint committee, it is factually distinguishable from the present dispute. To the extent the district court's opinion is inconsistent with our own, we respectfully disagree.

reasons why the union officials might be hostile to them—they have pointed to no actions or remarks by Harris showing overt hostility or a less than conscientious performance of duty. Indeed, the Earlys' affidavits suggest that it was Cullen's attitude, rather than Harris's, that they feared.[8]

On this record, in the absence of a timely objection, we see no basis for proceeding with the Earlys' claim that Harris's bias allows the court to look behind the joint committee's award. *See generally Stanton v. Delta Air Lines, Inc.,* 669 F.2d 833, 837–38 (1st Cir.1982).

### B. Unfair Representation by Harris as a Member of the Joint Committee

▉ The Earlys and amicus, Teamsters for a Democratic Union, also assert that Harris, as president of the local, owed them a duty to see that their grievance went to arbitration. Arbitration was the next stage of the contract grievance procedure, but would be reached only if the committee were to deadlock.

The Earlys would have us regard a joint committee proceeding not as the functional equivalent of an arbitration, but as a sort of screening mechanism designed to decide what cases should go to arbitration. They point out that a joint committee's composition makes it susceptible to abuses, such as collusion between employer and union representatives, in cases where the grievants are unpopular with the union's majority or its officialdom. A few courts and commentators have expressed similar concerns, which we do not say are frivolous. *See Barrentine v. Arkansas-Best Freight System, Inc.,* 615 F.2d 1194 (8th Cir.1980), *reversed on other grounds,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *General Drivers v. Young & Hay Transportation Co.,* 522 F.2d 562, 567 n. 5 (8th Cir.1975);

Azoff, *Joint Committee Arbitration,* 47 Tul. L.Rev. 325, 327–29, 336 (1973); Clark, *The Duty of Fair Representation: A Theoretical Structure,* 51 Tex.L.Rev. 1119, 1169–71 (1973); Feller, *A General Theory of the Collective Bargaining Agreement,* 61 Cal.L. Rev. 663, 836–38 (1973).

The Earlys and amicus analogize the union officials on the committee to union business agents deciding whether to send a grievance to arbitration. They do not say the union representatives must deadlock in *every* instance, any more than a business agent must send a meritless case to arbitration. *See Vaca v. Sipes,* 386 U.S. at 191, 87 S.Ct. at 917. But they seem to argue that the union's duty of fair representation requires its representatives on the joint committee to resolve all doubts in favor of the grievant and arbitration. *But see Teamsters Local Union No. 30 v. Helms Express, Inc.,* 591 F.2d 211 (3d Cir.) (union members of joint committee owe grievant no duty of fair representation), *cert. denied,* 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979); *Larry v. Penn Truck Aids, Inc.,* 94 F.R.D. 708 (E.D.Pa.1982) (same).

Appellants' approach would alter the character of the joint committee from that contemplated in the collective bargaining agreement. The committee would become largely an alternative mechanism for deciding whether to bring a grievance to arbitration. Yet under the collective bargaining agreement, which is the controlling document, a joint committee decision is to be "final and binding." Absent a genuine deadlock, we believe the parties intended the committee to be a substitute for, and not simply a precursor of, arbitration. The Supreme Court has consistently treated the decisions of joint committees and of arbitrators identically. *See, e.g., United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101

---

8. Stephen Early's affidavit states:

Someone from the committee asked if we felt Local 82 had properly represented us. We all said "yes." I said, "yes," because I felt if I said "no" it would alienate the 2 Union committee members, Cullen and Harris. I was particularly sensitive about alienating Mr. Cullen, because he had made a state-

ment which was damaging to my case and therefore seemed to me to be already somewhat against me.

Cullen's statement was apparently one in which he disagreed with the Earlys' construction of the contract. For reasons already given in discussing Griffiths, we see no impropriety in this position by union officials.

S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231; *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *General Drivers v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). Without any indication from either the Supreme Court or the collective bargaining agreement that a joint committee is to be perceived differently from an arbitrator, we cannot impose a duty of partiality on the members of such an adjudicatory body. Members of a joint committee, like arbitrators, must decide each case honestly and conscientiously on its merits. *See Chicago Cartage Co. v. Teamsters,* 659 F.2d 825 (7th Cir.1981). On the record before us, we cannot say that the union representatives' vote against the Earlys raises a triable issue as to some breach of the duty of fair representation.

### C. Written Reasons

■ Appellants and amicus urge that joint committees be required to give written reasons for their decisions. Emphasizing the secrecy that veils joint committee proceedings, they claim that without written explanations it may be impossible to evaluate the legitimacy of the decision or to detect bias. For support, they point to a law review article[9] and to a recent Eighth Circuit decision, *Harvill v. Roadway Express, Inc.,* 640 F.2d 167 (8th Cir.1981). According to appellants, a failure to provide a statement of reasons should give "rise to a rebuttable inference ... that the undisclosed reasoning does not necessarily support its conclusions."

The problem in *Harvill,* however, was more the need for parties and courts to be able to understand the substance of an award than to understand the logic behind it. There the award itself was ambiguous. We also note that, by dismissing the complaint, the *Harvill* court upheld the joint committee's decision despite its failure to give reasons. Other than the dicta in *Har-*

*vill,* the cases provide no support for appellants' position. Nor does the collective bargaining agreement, which, in theory, embodies the complete agreement of the parties, including the union and its members. Arbitrators need not give reasons. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); *Virgin Islands Nursing Association v. Schneider,* 668 F.2d 221, 223–24 (3d Cir.1981). Without any indication from Congress or the Supreme Court that joint committees are subject to special rules in this regard, we see no legal basis for insisting that joint committees provide written reasons for their decisions.

*Affirmed.*

---

9. Azoff, *Joint Committee Arbitration,* 47 Tul.L.    Rev. 325 (1973).