762 F.2d 1011
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JOSEPH A. SPANIOLO, PLAINTIFF-APPELLANT,
v.
CENTRAL CARTAGE COMPANY AND TEAMSTERS UNION LOCAL 299,
DEFENDANTS-APPELLEES.
 NO. 84-1166
 United States Court of Appeals, Sixth Circuit.
 3/29/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: KENNEDY and CONTIE, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Joseph Spaniolo, the plaintiff, appeals from a summary judgment granted by the district court to defendants Central Cartage Company and Teamsters Local Union No. 299. This case involves a breach of collective bargaining agreement/unfair representation claim (Count I) and a claim of arbitrator misconduct under 9 U.S.C. Sec. 10(c) (Count II). Spaniolo seeks to overturn a MCLAC-Michigan Joint State Committee (Joint Committee) decision upholding his discharge for not reporting to work on August 20, 1982. For the reasons set forth below, we affirm.
 
 I.
 
 2
 Viewed in the light most favorable to the plaintiff, the evidence shows that Spaniolo, a Teamsters steward, had worked for Central Cartage as a trucker for thirteen years as of the summer of 1982. At that time, Spaniolo announced his candidacy for the position of Secretary/Treasurer of Local 299. After Spaniolo announced his candidacy, some of his co-workers began distributing a petition to elect a new steward. Henry Bechard was a union business agent. Upon receiving the petition from the workers, Bechard requested nominations for Spaniolo's steward position.
 
 
 3
 On August 17, 1982, Spaniolo contacted Jerry Zimmers, then Secretary/Treasurer of Local 299, to challenge the petition. Spaniolo asked that the petition be reviewed at the next Local 299 Executive Board meeting and that he be permitted to appear. The next meeting had already been scheduled for 1:00 P.M. on Friday, August 20. Zimmers granted Spaniolo's request to appear. Under Article 42 of the collective bargaining agreement, the union was entitled, upon forty-eight hours notice to Central Cartage, to authorize employees to take time off without pay in order to attend to union business.
 
 
 4
 At the end of his shift on August 18, Spaniolo informed his supervisor that he would not report for work on August 20 because of the union meeting. He gave the head dispatcher the same information the next morning. Later that day, the dispatcher contacted Spaniolo by radio and instructed him to call terminal manager William Oddo. Oddo told Spaniolo that if he failed to report for work on August 20, he would be considered a voluntary quit. Spaniolo responded that he had Zimmers' permission to attend the union meeting and that he intended to do so.
 
 
 5
 Oddo contacted Vice President of Labor Relations Garavaglia, who in turn called Bechard. Bechard responded that Spaniolo was not needed at the union meeting. Bechard was unaware, however, that the petition to elect a new steward had been placed on the agenda. After Garavaglia relayed Bechard's comments to Oddo, the latter again contacted Spaniolo and ordered him to report for work the next day. Spaniolo reiterated that he had Zimmers' permission to attend the union meeting. Oddo responded that he had checked with Bechard and had been informed to the contrary. Spaniolo then stated that he had spoken with Zimmers rather Bechard and that he would attend the meeting. Before his shift ended on August 19, Spaniolo was warned for a third time that he must report for work the next day.
 
 
 6
 Bechard discovered late in the day on August 19 that Zimmers had granted Spaniolo permission to appear at the union meeting. Although Bechard then tried to contact Garavaglia, he was unsuccessful. Spaniolo did not report for work on August 20. At 7:52 A.M., Central Cartage sent a telegram accepting Spaniolo's 'voluntary quit and/or discharge.' At the union meeting, the petition to elect a new steward was quashed because many of the signatures on the petition were invalid.
 
 
 7
 Spaniolo grieved the discharge. Although it was the job of Bechard and union business agent McDonald to represent Spaniolo in grievance proceedings, Bechard and McDonald offered to allow Spaniolo to select another representative.[1] Spaniolo responded that Local 299 President Karagozian should decide. The latter ordered Bechard and McDonald to continue representing Spaniolo but stated that he also would attend grievance proceedings to insure that Bechard would perform competently.
 
 
 8
 The grievance was not resolved at the local level and was referred to the Joint Committee composed of three management representatives and three union members who were not members of Local 299. If the Joint Committee had deadlocked, the grievance would have proceeded to the next step in the grievance process. A majority of the Joint Committee voted against Spaniolo, however. Under the collective bargaining agreement, this decision was final and binding.
 
 
 9
 At the Joint Committee hearing prior to the vote, Spaniolo's four-page statement was read. Problems arose when the company introduced two pieces of campaign literature that had been circulated by Spaniolo after his discharge. Although Spaniolo objected to the exhibits on grounds of relevance, the Joint Committee admitted them. One exhibit stated in part:
 
 
 10
 Central Cartage officials are well aware of my intention to enforce all labor contracts they maintain with the Teamsters Union. But of more concern to them than to corrupt elements in our union, is my committment to the tradition of Jimmy Hoffa and the due[sic]-what-you-have-to dynamic union that constantly is growing and protecting the gains we have already made. As a member of Local 299 since 1963, and as an active spokesman of rank and file members and employees of Central Cartage since the early 70s, I have fought against illegal leasing arrangements, improper discharges, pay cuts, and the infamous customs service operation Central has attempted to shove down our throats.
 
 
 11
 The other exhibit stated in pertinent part:
 
 
 12
 Central Cartage acted with union officials to attempt to deny Joe [Spaniolo] his right (His American Right) to run for union office by firing him illegally, (for taking Friday the 20th to attend a local union Executive Board Meeting to protest an inproper [sic] petition. Since his discharge his business agent has failed to represent him ([sic] no local level grievance hearing has yet been set up).
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 The corrupt elements in the union that work together with employers to deny decent union men the right to run for office are here by put on notice that we are not going to back down and intend to win the election and restore Local 299 to the proud position that it once was under the leadership of Jimmy Hoffa.
 
 
 16
 Immediately after these exhibits were introduced, Bechard stated that he and Spaniolo were at odds, that Spaniolo had disparaged his character in the campaign literature and that he resented it.
 
 
 17
 Before the hearing adjourned, the Joint Committee asked Spaniolo if he was satisfied with the representation that he had received. He replied that he was satisfied. Spaniolo subsequently filed suit, however, contending that the union had violated its duty to represent him fairly at the hearing, that Central Cartage had breached the collective bargaining agreement in discharging him and that the Joint Committee had been guilty of misconduct in admitting the two pieces of campaign literature.
 
 
 18
 During his deposition, Spaniolo indicated why he thought that the union had unfairly represented him:
 
 
 19
 Q: [b]ut I have gone through every argument that we have made and you have agreed that they were all made at the local level, and one way or another they were all made on October 4, 1982.
 
 
 20
 I'm asking you what articles, what in addition did you want argued that was not argued. That's what I'm trying to get at. Tell us.
 
 
 21
 A: Well, the board is comprised of six people. There is three employers and three union. It would seem to me that my business agent, my union representatives could be able to persuade, three union officials through competent representation, that I shouldn't be discharged. When they were not able to persuade three other brother union officials, they are not doing their job. I didn't do anything wrong.
 
 
 22
 Spaniolo's Second Deposition at 90.
 
 
 23
 The district court granted the defendants' motions for summary judgment and denied Spaniolo's motion for summary judgment on the breach of contract claim. In discussing the unfair representation issue, the court stated that the relevant question was whether Bechard's performance at the hearing had been materially deficient rather than whether Bechard felt hostile towards the plaintiff. Since Spaniolo's grievance had been timely processed, since Spaniolo had not identified any argument that Bechard should have made on his behalf but did not make and since Spaniolo had told the Joint Committee that he was satisfied with the representation that he had received, the court held that the union's handling of the grievance had not been deficient. The court rejected Spaniolo's argument that a union represents one of its members unfairly simply because it fails to obtain a deadlocked vote from a Joint Committee. On the arbitrator misconduct question, the district court held that error in admitting evidence does not constitute misconduct within the meaning of 9 U.S.C. Sec. 10(c) as a matter of law and that Spaniolo had not been prejudiced by the admission of the campaign literature. The district court did not address the breach of collective bargaining agreement issue.
 
 II.
 
 24
 The standard of review in this case is whether the defendants have conclusively shown, viewing the evidence in the light most favorable to the plaintiff, that there exists no genuine issue of material fact and that they are entitled to judgment as a matter of law. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979). In order to obtain relief under Count I against either Central Cartage or the union, Spaniolo must demonstrate that Central Cartage breached the collective bargaining agreement and that the union violated its duty of fair representation. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976). If the union represented Spaniolo fairly, then the question of whether Central Cartage breached the collective bargaining agreement need not be reached.
 
 
 25
 Although this case involves a final and binding decision rendered by a Joint Committee composed of management and union representatives rather than by a neutral arbitrator, the determination of the Joint Committee must be treated as if it were an arbitral award. Morris v. Werner-Continental, Inc., 466 F.2d 1185, 1190-91 (6th Cir. 1972), cert. denied, 411 U.S. 965 (1973); Early v. Eastern Transfer, 699 F.2d 552, 559-60 (1st Cir.), cert. denied, 104 S. Ct. 93 (1983). Where a union has prosecuted a member's grievance until a final and binding decision has been obtained, the member must show that the union acted arbitrarily, discriminatorily or in bad faith in processing the grievance, see, e.g., Poole v. Budd Company, 706 F.2d 181, 183 (6th Cir. 1983); Milstead v. International Brotherhood of Teamsters, 580 F.2d 232, 235 (6th Cir. 1978), cert. denied, 454 U.S. 896 (1981), and that the union's inadequate representation 'seriously undermined the integrity of the arbitral process,' United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 61 (1981); Hines, 424 U.S. at 567; Early, 699 F.2d at 555, in order to establish unfair representation. Like the district court, we address only the first element of Spaniolo's unfair representation claim.
 
 
 26
 The district court correctly ruled that although Bechard may have harbored ill feelings toward Spaniolo, this fact is immaterial if Bechard's alleged hostility did not result in materially deficient handling of Spaniolo's grievance. Early, 699 F.2d at 556; Hardee v. North Carolina Allstate Services, Inc., 537 F.2d 1255, 1258 (4th Cir. 1976). We hold that Spaniolo has not presented a genuine issue of material fact regarding whether the union's handling of the grievance was deficient and that the union fairly represented him at the Joint Committee hearing. Spaniolo has produced no evidence that the union representatives were unprepared for the hearing or that they failed to raise any argument that should have been raised. Moreover, we agree with the district court that the union's failure to obtain a deadlocked Joint Committee vote, without more, does not constitute unfair representation. Furthermore, although Bechard mistakenly informed Garavaglia that Spaniolo was not needed at the union meeting, that mistake is irrelevant to assessing the quality of the representation subsequently afforded in the grievance proceedings. The only evidence of unfair representation in this record is Bechard's statement during the hearing that he resented the accusations contained in the two pieces of campaign literature introduced by Garavaglia. Since the representation afforded in this case was otherwise unobjectionable and since Spaniolo told the Joint Committee before the hearing adjourned that he was satisfied with the representation that he had received, Bechard's comment did not render the union's handling of the grievance materially deficient. See Early, 699 F.2d at 557; Hardee, 537 F.2d at 1259. Having held that the union did not violate its duty of fair representation, we need not address the breach of collective bargaining agreement issue.
 
 III.
 
 27
 This court has applied 9 U.S.C. Sec. 10 to arbitrations occurring pursuant to collective bargaining agreements. See General Telephone Co. v. Communications Workers, 648 F.2d 452, 456-57 (6th Cir. 1981). If the Joint Committee violated Sec. 10(c) in this case, then the Joint Committee's decision must be vacated and the case remanded for another hearing. See 9 U.S.C. Sec. 10(e).
 
 
 28
 Spaniolo contends that the Joint Committee was guilty of misconduct in admitting two pieces of irrelevant campaign literature that the members of the Joint Committee may have found insulting. He claims that admitting this evidence constituted 'misbehavior' and that the evidence prejudiced his case. See 9 U.S.C. Sec. 10(c). This court had held that an arbitrator or joint committee will not be found guilty of misconduct absent 'fraud or bad faith or demonstrated bias or collusion.' Morris v. Werner-Continental, Inc., 466 F.2d 1185, 1190-91 (6th Cir. 1972). See also Early, 699 F.2d at 558. Spaniolo clearly has not satisfied this standard in this case; even assuming that the campaign literature was irrelevant, mistakes in admitting evidence are insufficient to require that an arbitrator's (or joint committee's) decision be vacated. See Textile Workers Union v. American Thread Co., 291 F.2d 894, 896 (4th Cir. 1961). This is particularly true here where the union members on the Joint Committee were not affiliated with Local 299. Spaniolo has not explained why these persons, who he depended upon to create a deadlock in the Joint Committee, would have become biased against him upon learning of his accusations of corruption within Local 299. The Joint Committee was not guilty of misconduct within the meaning of 9 U.S.C. Sec. 10(c).
 
 
 29
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The district court held that whether ill feelings existed between Spaniolo and Bechard was a question of fact. The record contains evidence that Bechard had previously dropped an NLRB charge which Spaniolo had wanted to prosecute, that the two men were members of rival parties within the union, that Spaniolo was angry with Bechard for accepting the petition for steward election, that Spaniolo blamed Bechard for the discharge because the latter had misinformed Garavaglia about Spaniolo's need to attend the union meeting and that Spaniolo and Bechard had almost come to blows at a picket site just after the discharge