Alvin C. **ANGOVE**, Plaintiff,

v.

**UNITED PARCEL SERVICE, INC.**, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America and Local 243, Defendants.

Civ. No. 86–CV–74366–DT.

United States District Court,
E.D. Michigan, S.D.

July 12, 1988.

Barbara Harvey, Detroit, Mich., for plaintiff.

Robert Vercrysee, Gregory Murray, Detroit, Mich., for defendant United Parcel Service.

Gerry Miller, Milwaukee, Wis., for defendant IBT, Local 243.

MEMORANDUM AND ORDER

COHN, District Judge.

I.

This is a hybrid breach of labor contract and unfair representation case arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff, Alvin Angove, was discharged from his employment with defendant, United Parcel Service (the employer), on March 13, 1986 for allegedly encouraging a work slowdown in violation of the "stewards clause" of the labor contract, known as the National Master United Parcel Service Agreement. Plaintiff filed a grievance with his bargaining representative, defendant Teamsters Local 243 (the union), which grieved the discharge through a hearing on April 9, 1986 before the Teamsters' and United Parcel Service's Joint State Grievance Committee (the committee), the entity with contractual authority to hear and make a final and binding decision on the grievance. After the committee denied the grievance, plaintiff filed suit alleging unfair representation, breach of contract, fraud and bias in the grievance procedure and an unfair labor practice.

Defendants moved for summary judgment, arguing that the record conclusively established that no unfair representation had occurred. Plaintiff responded. At a hearing held on the motions on May 9, 1988, the Court indicated that it was inclined to grant the motions with respect to the Section 301 claim, but voiced some concern about whether any legal authority supported the proposition that such joint grievance committees, as used here, were entitled to the same degree of judicial deference normally accorded to an award rendered by a neutral, third-party arbitrator. The Court allowed plaintiff time to file a supplemental brief. Plaintiff has filed a supplemental brief with exhibits; defendants have responded.

The Court concludes that plaintiff has failed to make out a case of unfair representation; Counts I and II of the complaint (breach of contract and unfair representation) will therefore be dismissed. Further, with respect to Count IV (unfair labor practice), plaintiff has not actively pursued it on summary judgment, and in any event, the National Labor Relations Board has jurisdiction over this issue, 29 U.S.C. § 160. Finally, with respect to Count III (void joint committee decision), about which the Court expressed concern at the hearing, plaintiff has not made out a case for trial.

II.

A.

In *Teamsters Freight Employees Local 480 v. Bowling Green Express, Inc.,* 707 F.2d 254 (6th Cir.1983), the court of appeals stated:

[F]inal and binding decisions made by joint employer-union grievance panels, like the one in the instant case, must be enforced under § 301 of the Labor Management Relations Act of 1947. These decisions are entitled to the same deference as that given to the decision of an arbitrator under national labor law. *General Drivers Local 89 v. Riss & Co.,* [372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918] (1963).

*Id.* at 256; *Sheet Metal Workers Int'l Local 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 744 (9th Cir.1985); *Early v. Eastern Transfer,* 699 F.2d 552, 555 (1st Cir.1983). Such joint committee decisions, however, will be disregarded on a showing of "fraud or bad faith or demonstrated bias

or collusion." *Morris v. Werner–Continental, Inc.*, 466 F.2d 1185, 190 (6th Cir. 1972); *United Paperworkers v. Misco*, 484 U.S. 29, ——, 108 S.Ct. 364, 371, 98 L.Ed. 2d 286, 299 (1987); *Early, supra*, 699 F.2d at 558 (citing cases).

### B.

█ In his supplemental brief plaintiff argues that the committee revealed its bias by subjecting him to a double standard in its evidentiary rulings and by violating its own rules of procedure. Plaintiff says the rules governing the hearing procedure do not provide for the admission into evidence of notarized statements of an absent witness, yet the employer was permitted to introduce such a statement. Plaintiff also says the employer was permitted to present testimony by a surprise witness, despite its failure to give any prior notice to the union. Plaintiff says when he sought to introduce several notarized statements by present and absent witnesses, the employer objected because it had received no prior notice of the statements and the committee initially decided to exclude the evidence; it was not until after heated argument that the committee finally decided to allow plaintiff's witnesses who were present to read their statements into the record, to let the absent witness' statements be read into the record and to take the latters' statements "under advisement". Finally, plaintiff says the panel excluded several "group grievances", critical to his case, on the ground that they were not notarized, yet plaintiff argues that this evidence was not "testimonial", was merely "evidence", and therefore should have been admitted.

Plaintiff's arguments are without merit. A close reading of the transcript of the committee hearing discloses that the evidentiary rulings were not as clearcut as plaintiff makes them out to be. The affidavits of Coy and Murphy establish that the committee had a long-standing practice of admitting notarized statements into evidence in addition to sworn statements of absent witnesses; plaintiff has not shown that the practice was to the contrary. The employer was permitted to present testimo-

ny of a "surprise" witness because the witness came forth with evidence just prior to the hearing and because plaintiff, in any event, had an opportunity to cross-examine the witness. The Court does note that Coy objected to the testimony. Further, the committee was initially not inclined to permit plaintiff to introduce notarized statements of certain present or absent witnesses because the employer received no prior notice of the statements and there was no apparent explanation of why the employer had not been notified. Once Coy explained (heatedly) that he did not obtain the statements until just prior to the hearing, and argued that the statements should be read into the record and taken "under advisement", the committee admitted the evidence. Finally, to the extent each signer explained the events surrounding the discharge, the group grievances were testimonial. To the extent each voices disagreement with plaintiff's discharge, the popularity of plaintiff's cause was irrelevant to the ultimate issue of whether he had violated the stewards clause of the labor contract. And, to the extent the mass grievances, also signed by the employer's star witness, Hines, cast doubt on Hines's credibility, they were merely cumulative of evidence already presented to the committee— Hines was a live witness and Coy cross-examined him extensively regarding his contradictory statements, including the fact that he had signed the mass grievances expressing disapproval of plaintiff's discharge.

Plaintiff also cannot survive summary judgment on the ground that the committee was biased merely on the theory that it expressed heated conflict over evidentiary rulings during the hearing. Both the employer and the union strenuously objected to the admission of any evidence not in their respective favor; generally, the committee's inclination on evidentiary rulings was divided along similar lines.

Finally, plaintiff has presented no evidence that Coy chose the union members of the committee panel which heard plaintiff's grievance in an effort to somehow obtain a pre-ordained result. Coy's undisputed affi-

davit establishes that he retired in 1985 from his position as Union Co–Chairman of the Joint State Grievance Committee. Thus, prior to plaintiff's 1986 hearing, according to the committee's rules of procedure, Coy was apparently not in a position to select the union members of the panel which heard plaintiff's grievance.

### C.

While the Court was initially concerned with the functional differences between joint committees and neutral, third-party arbitrators, the Court is nonetheless reminded by the Supreme Court in *United Paperworkers v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), that:

> [F]ederal statutes regulating labor-management relations ... relfect a decided preference for private settlement of labor disputes without the intervention of government: The Labor Management Relations Act of 1947, ..., 29 USC § 173(d) provides that *"final adjustment by a method agreed upon by the parties* is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement."*

*Id.* 484 U.S. at ——, 108 S.Ct. at 370, 98 L.Ed.2d at 298 (emphasis added). Plaintiff has simply not demonstrated such evidence of fraud, bad faith or collusion to justify this Court's disregard of a final decision on plaintiff's grievance reached by a method agreed upon by the parties.

### III.

For the foregoing reasons and for the reasons stated on the record at the hearing held on May 9, 1988, defendants' motions for summary judgment are GRANTED, plaintiff's motion is DENIED and the complaint is DISMISSED.

SO ORDERED.