John ACHILLI, Plaintiff, Appellee,

v.

JOHN J. NISSEN BAKING CO.,
et al., Defendants, Appellees.

Teamsters Local Union No. 64,
etc., Defendant, Appellant.

John ACHILLI, Plaintiff, Appellant,

v.

JOHN J. NISSEN BAKING CO. and
Teamsters Union Local 64, etc., et
al., Defendants, Appellees.

John ACHILLI, Plaintiff, Appellant,

v.

J.J. NISSEN BAKING CO., et
al., Defendants, Appellees.

John ACHILLI, Plaintiff, Appellee,

v.

J.J. NISSEN BAKING CO., et
al., Defendants, Appellees.

Teamsters Union Local 64, Affiliated
With the International Brotherhood of
Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Defendant,
Appellant.

Nos. 92–1167, 92–1221, 92–
1407 and 92–1408.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1992.

Decided March 29, 1993.

Marc B. Gursky, Providence, RI, for Teamsters Union Local No. 64, etc.

Arthur P. Menard with whom Cuddy, Lynch & Bixby, Boston, MA, was on brief, for John J. Nissen Baking Co.

Mark L. Galvin, Providence, RI, for John Achilli.

Before BREYER, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

BREYER, Chief Judge.

On April 4, 1988, John Achilli, a union shop steward and a bakery sales driver at the John J. Nissen Baking Company, told other drivers not to load extra boxes of cream horns (a kind of eclair) that Nissen wanted them to transport. Nissen immediately dismissed Achilli for having violated an anti-wildcat provision in the collective bargaining agreement. Achilli went to arbitration, lost, and then brought this lawsuit against his Local Union (as well as Nissen), claiming that the Local had not represented him properly. *See* Labor Management Relations Act ("LMRA") §§ 9(a), 301(a), 29 U.S.C. §§ 159(a), 185(a); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The district court agreed with Achilli that 1) the Local should have told the arbitrators that Achilli, in effect, was following union orders, and 2) had the arbitrators (or Nissen) known this, Achilli probably would have kept his job. The court awarded Achilli damages of $15,000 plus attorneys' fees. The Local and Achilli have filed appeals. We affirm the judgment.

## I.

### *The Local Union's Appeal*

The Local makes six arguments, which we shall discuss in turn.

1. **The Basic Violation.** The Local argues that the evidence does not support the district court's finding that it

failed to fulfill its legal obligation to represent its member Achilli fairly. *See Vaca,* 386 U.S. at 190, 87 S.Ct. at 916. This obligation, "judicially developed as a necessary corollary to the [union's] status of exclusive representative," *The Developing Labor Law* 1409 (Patrick Hardin ed., 3d ed. 1992), does not require perfect representation, or even representation free of negligence. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976) ("[t]he grievance process cannot be expected to be error-free"); *United Steelworkers of America, etc. v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911–12, 109 L.Ed.2d 362 (1990) (union's "mere negligence" does not state a claim for breach of duty of fair representation). It does mean, however, that a labor organization will be liable if it significantly harms its members through actions that are arbitrary, reckless, or in bad faith. *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916; *Alicea v. Suffield Poultry, Inc.,* 902 F.2d 125, 129–30 (1st Cir.1990). *See also* Theodore Kheel, *Labor Law* § 28.04[2][c] at 28–65 (1989) ("reckless disregard" of unit employee's interests is actionable breach of duty of fair representation). And, the evidence here supports a finding that the Local acted in bad faith, intentionally failing to represent Achilli properly for reasons unrelated to legitimate union objectives. *Amalgamated Ass'n of Street, etc. v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971).

The evidence in the record, read favorably to Achilli, the winning party, reveals the following:

1. Achilli, a driver-salesman and shop steward, had worked at Nissen for ten years.

2. During 1987 and 1988, Nissen management would sometimes provide drivers with more boxes of pastry than the drivers had expected. This practice—of supplying what the drivers called "add-ons"—was a source of continuing controversy.

3. In October 1987, at a Local meeting, Paul Hanoian, the Local's Business Agent, told Achilli and other drivers that they were "not to take unnecessary add-[ons]" and that it was "left up to the shop steward to decide" whether or not a particular add-on was "unnecessary."

4. On April 4, 1988, Nissen doubled the number of cream horns the drivers were to carry, leading many drivers to object. Achilli wrote a sign telling the drivers to leave the "add-on cream horns" behind, and several did so.

5. Later that day, Hanoian learned of the add-on cream horn incident, and that Nissen intended to dismiss Achilli, while retaining the other drivers. Hanoian spoke to Nissen, conceded that Achilli's conduct was improper, but asked Nissen to retain Achilli anyway. *Hanoian said nothing about his October meeting instruction.*

6. Nissen dismissed Achilli. The Local sought arbitration. It provided a union official, Joseph Padellero, to represent Achilli. Achilli told Padellero (with Hanoian present) that he had "left the cream horns behind because of the meeting … in October." Hanoian replied, "You can't say that.... [T]he company can sue the union if you say that." And Hanoian later repeated, "Well, you just can't say that."

7. Later, at the arbitration meeting, Padellero conceded that Achilli's action violated the collective bargaining agreement. And, while he pointed out various mitigating circumstances, *he said nothing about the October meeting instruction.* The arbitration panel decided against Achilli (2–0).

These facts indicate a conflict between the Local's duty to represent a member fairly and the Local's own interest. The Local resolved the conflict in its own favor. The evidence shows no legitimate reason for the Local's choice, and it does not show that a contrary choice would have hurt the Local. *Cf. Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1303 (7th Cir.1992). The evidence also permitted the district court to find that, had the Local resolved the conflict differently—had it told Nissen or the arbitrators about the October meeting instruction—then Achilli,

like the other wildcatting drivers, would have kept his job. At trial, the Local defended itself primarily by trying to show a different version of the facts. But, the district court believed Achilli's witnesses, not the Local's.

The Local adds that Achilli, on his own, could have told the arbitrators about the October meeting instruction. But, the district court could reasonably find the contrary, namely that the Local's pressure, along with Achilli's dependence upon his representative at the hearing, make his failure to volunteer this information understandable, indeed, less than purely voluntary, and, therefore, insufficient to absolve the Local of causal responsibility. *Cf. Alicea*, 902 F.2d at 127–29 & n. 6, 133.

■ **2. Exhaustion.** The Local argues that Achilli should have exhausted internal union remedies before bringing this lawsuit. *Clayton v. Int'l Union, United Auto., etc.*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). We have no doubt that the exhaustion requirement is critically important, for it helps to guarantee union self-government and independence. *See NLRB v. Indus. Union of Marine & Shipbuilding Workers*, 391 U.S. 418, 429, 88 S.Ct. 1717, 1724, 20 L.Ed.2d 706 (1968) (Harlan, J., concurring). But, the Local cannot insist that Achilli exhaust a remedy that does not exist. *Clayton*, 451 U.S. at 689, 101 S.Ct. at 2095 (1981). Here, the Local, to demonstrate the existence of an internal remedy that might have given Achilli the damages he seeks, simply pointed to Article XIX, section 9(a) of the Teamsters Constitution, which reads as follows:

> Decisions and penalties imposed upon ... Local Unions ... found guilty [by the Teamsters' internal appeals tribunal] of charges [brought by aggrieved members] may consist of reprimands, fines, suspensions, expulsions, revocations, denial to hold any office ..., or commands to do or perform, or refrain from doing or performing, specified acts.... If a fine is assessed against a Local Union ... the payment shall be to the treasury of the Joint Council.

This provision does *not* say that the internal procedure permits the award of damages. Its statement that any "fine" will be made "to the treasury of the Joint Council" suggests the opposite. And, two federal circuits have said that this provision seems *not* to provide for a damage remedy. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988); *Winter v. Local Union No. 639, etc.*, 569 F.2d 146, 149 (D.C.Cir.1977). The Local provided no affidavits, nor did it point to a single example that might suggest the contrary. In these circumstances, the district court could properly hold that the Local failed to prove the existence of an internal damage remedy. *See Doty v. Sewall*, 908 F.2d 1053, 1061 (1st Cir.1990).

■ **3. Breach of the Collective Bargaining Agreement.** The Local argues that, whether or not Achilli was following Hanoian's instructions, Achilli nonetheless violated the collective bargaining agreement, which prohibited union representatives from inciting work-stoppages. Hence, Nissen had "just cause" to dismiss Achilli, and Nissen did not breach the contract in doing so. The Local adds that a section 301 plaintiff must prove not only that the union breached its duty to represent him fairly, but also that the employer violated the collective bargaining agreement. LMRA § 301(a), 29 U.S.C. § 185(a); *see Kissinger v. United States Postal Service*, 801 F.2d 551, 553 (1st Cir.1986).

The short, conclusive answer to this argument is that the district court found that the arbitrators would likely have ordered Achilli reinstated. And, that holding had adequate record support. Arbitrators, who are primarily responsible for interpreting contractual terms such as "just cause," normally insist that employers impose punishment in a consistent manner, treating alike employees who act alike, at least in the absence of a reasonable basis for a variation. *See* Frank Elkouri & Edna Asper Elkouri, *How Arbitration Works* 684 (4th ed. 1985). The evidence here shows that Nissen did not discipline a different shop steward who, following union instructions, had instituted, or at least condoned, another work stoppage. It also shows that

Nissen did not punish any of the other drivers who, on April 4 and 5, 1987, engaged in a wild-cat work stoppage at the direction of their union representative, namely, Achilli. The district court could therefore have reasonably predicted that Achilli's arbitrators would have set aside his dismissal as lacking "just cause" had it only known that Achilli, too, was following instructions.

4. **Measuring Damages.** The district court found that the Local's bad faith conduct led to Achilli's discharge. It measured the harm inflicted by taking the wages that Nissen would have paid Achilli as long as he was looking for work, and subtracting the wages he earned in other, interim jobs. The total award came to about $15,000. The Local argues that the court's damage award was legally improper.

■ First, the Local says that the court should not have made an award, but instead should have resubmitted the case to arbitration, or, at least, have subtracted from the $15,000 award a sum representing a lesser, but alternative, punishment that a knowledgeable Nissen or arbitration board might have imposed in lieu of discharge. The law, however, grants courts broad authority to create an "appropriate remedy" for a breach of the duty of "fair representation," which remedy may "vary with the circumstances of the particular breach." *Vaca*, 386 U.S. at 195, 87 S.Ct. at 919. The circumstances here include fairly strong evidence that a fair arbitration proceeding would have led to reinstatement, little evidence that it would have meant any large monetary punishment, no evidence about the precise amount of any such penalty, a fairly small damages award, and comparatively large administrative costs and delays attached to any new arbitration proceeding. These circumstances, in our view, make the $15,000 damage remedy a fair and practical remedy. Given these circumstances, the court need not have resubmitted the matter to arbitration, nor need it have subtracted some unknown small sum as representing a hypothetical alternative punishment. *Id.* at

196, 87 S.Ct. at 920; Kheel, *Labor Law* § 28.02[2][iii] at 28–22.

■ Second, the Local argues that Achilli did not properly mitigate his damages by looking for alternative employment after he was discharged. The record, however, contains evidence that Achilli did read newspaper advertisements but found nothing comparable; that he investigated a job possibility with a lumber company, which he turned down because "it didn't pay enough money"; and that his failure to pursue a job prospect to deliver bread in Worcester was due to the long commute and the fact that he had received no definite offer. Though the issue is a fairly close one, the district court, in our view, could conclude from this evidence that the Local failed to prove non-mitigation. *See NLRB v. Arduini Mfg. Corp.*, 394 F.2d 420, 423 (1st Cir.1968) (union bears burden of proving that the employee failed to make a reasonable search for post-termination employment).

■ Third, the Local argues that the district court should have required the employer, Nissen, to pay a share of the damages. The short answer to this claim, however, is that the court apportions liability between employer and union "according to the damage caused by the fault of each." *Vaca*, 386 U.S. at 197, 87 S.Ct. at 920. Here, the court could reasonably conclude that the employer was not at fault. Hence, its apportionment of all the damages to the Local is reasonable and lawful. *See Baskin v. Hawley*, 807 F.2d 1120, 1132–33 (2d Cir.1986).

■ Fourth, the Local, conceding that the court may award attorney's fees as part of the damages that it caused Achilli, argues that the court should have subtracted from total fees an amount reflecting legal time spent on Achilli's *un*successful legal claims. *Lewis v. Kendrick*, 944 F.2d 949, 957–58 (1st Cir.1991). This apportionment, however, is primarily for the district court, not this court, to make. *Zuniga v. United Can Co.*, 812 F.2d 443, 454 (9th Cir.1987). The record before us adequately supports its conclusion that the legal time and energy spent on unsuccessful claims

was either not readily separable from that spent on the successful claims, or separable but not significant.

## II.

### Achilli's Appeal

Achilli makes two arguments. First, he says that the district court should have ordered Nissen to reinstate him, something that Nissen is now no longer willing to do. The district court, however, could lawfully have found that reinstatement is no longer practicable. *See De Arroyo v. Sindicato de Trabajadores Packinghouse*, 425 F.2d 281, 292 (1st Cir.), *cert. denied, Puerto Rico Tel. Co. v. De Arroyo*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

Regardless, Achilli's complaint did not mention reinstatement; and, during trial, when Achilli was asked whether he had any interest in returning to Nissen, he said that he did not. We concede that, at the very end of trial, Achilli's counsel, in the context of talking about insurance benefits, said that Achilli would receive "credit ... if reinstated," and, in response to the court's question whether Achilli was "asking for reinstatement" answered, "he is." But, counsel immediately added the rather obscure comment that Achilli might "take the position that the Court can order reinstatement," and, if the court did so, he "can make a decision as to whether he would accept reinstatement or not." In this context, the court found that Achilli had waived the reinstatement remedy. That finding, in our view, is lawful. *Tinsley v. United Parcel Service, Inc.*, 665 F.2d 778, 779 (7th Cir.1981), *overruled on other grounds, Rupe v. Spector Freight Sys. Inc.*, 679 F.2d 685 (7th Cir.1982).

Second, Achilli says that the district court wrongly decided to end its damage calculation as of January 1, 1989, when the court found that Achilli had stopped trying to mitigate his damages. Achilli concedes that, on that date, he stopped looking for bread delivery work, and began his own house painting business. He says his decision to start that alternative, lower paying, business amounted to reasonable mitigation. The problem for Achilli, however, is that the district court decided that his decision to stop searching and start painting was *not* reasonable mitigation, but, rather, constituted a failure to use "reasonable diligence in obtaining new employment," and thereby to mitigate loss of income. *Arduini*, 394 F.2d at 423. This is a matter primarily for the district court. In reviewing this conclusion, we have compared the more extensive search efforts made in *NLRB v. Ryder System, Inc.*, 983 F.2d 705 (6th Cir.1993), with Achilli's efforts here. In *Ryder*, a wrongfully discharged trucker "diligently sought work as a truckdriver," taking short-term jobs at seven different trucking firms for two years, and sending applications to twenty others. *Id.* at 714–15. Achilli, by contrast, looked for work for nine months, during which time he failed to follow up on several union-provided leads. However we would have decided the question were we a trial court, these circumstances are sufficient on appeal to justify a district court conclusion that Achilli gave up too soon.

For these reasons the judgment of the district court is

**Affirmed.**