[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16596

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 02-21417-CV-CMA

AMADEO BIANCHI,

                                        Plaintiff-Appellee,

versus

ROADWAY  EXPRESS, INC., a foreign
corporation,

                                        Defendant-Appellant,

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, AND
WAREHOUSEMEN, LOCAL 390,
a labor organization,

                                        Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 9, 2006)**

Before HULL, MARCUS and HILL, Circuit Judges.

PER CURIAM:

After thirty-six years of employment as a tractor-trailer driver for defendant Roadway Express, Inc. (Roadway), plaintiff Amadeo Bianchi (Bianchi) was terminated. After hearing, a grievance panel upheld his termination. Thereafter, Bianchi brought a hybrid action under Section 301 of the Labor Management Relations Act, also known as the Taft-Hartley Act, 29 U.S.C. §185(a)(1947) (hybrid Section 301 claim), against employer Roadway, for breach of a provision of a collective bargaining agreement (CBA), and against the International Brotherhood of Teamsters, Local 390 (the Union), for breach of its duty of fair representation (DFR). Bianchi claimed that the Union, through its business agent, Don Marr (Marr), mishandled his grievance of wrongful termination, among other things, based on political and personal animosity between Marr and Bianchi and in retaliation for Bianchi's membership in Teamsters for a Democratic Union (TDU), a dissident Union organization.

After trial, a jury found that Roadway had fired Bianchi in violation of its CBA. It found that the Union, through Marr, had represented Bianchi arbitrarily, discriminatorily, and/or in bad faith at Bianchi's grievance hearing in breach of its DFR. On appeal, Roadway contends that the jury's finding of Union breach is not supported by the evidence. Roadway claims that Bianchi, with full knowledge of

2

all the relevant facts, waived the argument that Marr represented him in bad faith and with bias because Bianchi chose not to raise this issue before the grievance panel itself, before he received an adverse ruling from the panel.[1]

We agree with Roadway.  Based on the following discussion, we conclude that, by remaining silent and by failing to raise the issue of bad faith/bias at his panel hearing, Bianchi has waived his right to raise the issue in his claim against Roadway and on appeal.  We vacate the jury's award and grant judgment as a matter of law for Roadway.

## I.  FACTUAL BACKGROUND

The relevant facts are these.  Bianchi had worked for Roadway for thirty-six years.  He had been a member of the Union since 1959.  Bianchi also served as a Union steward, volunteering to aid other Union members.

Bianchi was a seasoned Union man, active in Union meetings and Union politics, well versed in the CBA, and well known for helping other Union members.  Bianchi was also a member of TDU.

Marr was the Union's business agent for Roadway.  He was Bianchi's Union representative at the panel grievance hearing.  The two men had a history of

---

[1] If so, the jury verdict cannot stand and we need not reach the issue of whether or not the introduction of certain evidence was prejudicial to Roadway's case and whether the district court abused its discretion in not granting Roadway a new trial.

3

political animosity with each other.[2]  Bianchi ran against Marr five times for Union office and once for delegate to the International Brotherhood of Teamsters convention, losing to Marr all six times.  In addition to their political rivalries, it was well known that Marr and Bianchi had open and ongoing personal conflicts with each other.[3]  Over the years, Bianchi filed several complaints against Marr and the Union leadership.

Bianchi was fired when Roadway determined that he had helped another employee, Issaah "Gerome" Daniels (Daniels) file a fraudulent injury report. Daniels was also terminated.  Roadway claims they were both fired for dishonesty and fraud in connection with the injury report.  Roadway contends that Bianchi instructed Daniels to claim an off-the-job injury as an on-the-job injury, and to

---

[2] To summarize the political animosity, Bianchi claims that Marr complained to other bargaining unit members that Bianchi was wasting Union funds by running for office; that Marr filed election protests against Bianchi for engaging in behavior in which Marr himself was engaging; that Marr berated and denigrated Bianchi to other bargaining union members; that Marr made fun of Bianchi and his supporters; that Marr ripped Bianchi's "palm cards" from voters' hands and threw them in the garbage; that Marr destroyed and discarded Bianchi's campaign materials; that Marr constantly referred to Bianchi as a "motherfucker"; and that Marr screamed at Bianchi to leave an outdoor lunch area as he was in "opposition country."

[3] To summarize the personal animosity, Bianchi claims that Marr repeatedly harassed Bianchi by making faces and by yelling obscenities at him; that Marr constantly mocked Bianchi's political supporters; that Marr told Bianchi many times to his face that he did not like him; that Marr generally referred to Bianchi as "that motherfucker"; and that Marr would tell other Union members that Bianchi was an idiot in the way he helped them with their Union grievances.

falsify the date of the injury on the form.[4]

Both Bianchi and Daniels claim it was a simple misunderstanding as to the date of the injury put on the form. Both claim that the injury did in fact occur on the job. Each man filed a grievance regarding his discharge.

Marr represented each man separately as their grievance proceedings advanced from the local level to the panel hearing level. The grievance panel was comprised of two Union members and two Roadway representatives. Daniels' grievance was heard the day before Bianchi's.[5]

Prior to Bianchi's hearing date, a co-worker informed Bianchi that Marr was only pretending to help him. Bianchi later testified at trial that he had been uncomfortable with Marr representing him, believing that Marr was only "acting" as though he was representing him. Still, at the hearing level, Bianchi did not ask for a different Union representative.

Bianchi contends that Marr's preparation for his panel hearing left him

---

[4] The details of the injury are not relevant here.

[5] Marr allegedly spoke to Daniels prior to his panel hearing, continuing to speak very disparagingly about Bianchi. Marr told Daniels that if Daniels testified that Bianchi had told him to falsify the date of injury put on the form, then Daniels would get off without a hearing. When Daniels refused, Marr said that Daniels had "pissed off" a Roadway official and would now have to go forward with a hearing. During Daniels' hearing, Marr blamed Bianchi for the mix-up with the date of injury put on the forms. He suggested that, while Marr gave Daniels proper advice, Bianchi had confused him. The panel overturned Daniels' termination and reinstated him.

worried about Marr's advocacy. Marr allegedly told another worker that he was merely "go[ing] through the motions" of getting "that motherfucker Bianchi his job back." Marr allegedly refused to call live witnesses, instead choosing to read statements into the record. Bianchi caught and fixed several of Marr's errors in preparation of an exhibit packet. In addition, Marr allegedly refused to push for a joint hearing with Daniels.

At the close of his grievance panel hearing, Bianchi was asked by a panel member whether or not he had presented all of his evidence. Bianchi responded that he was not fully prepared and wished that he had had live witnesses, but that he had presented everything in his favor. When the panel member asked Bianchi whether Marr had represented him properly and fully, Bianchi replied, "I believe Don Marr represented me properly and fully."

Bianchi never expressed to the panel any reservations that he may have had about Marr's biases or even those of any panelist.[6] On cross examination at trial, Bianchi was pressed on whether it was true or not that he was happy with Marr's representation. He admitted that he lied to the panel. Bianchi claimed that he did

---

[6] At the time of the panel hearing, Bianchi was also aware of the fact that he did not have a good relationship with one of the panel members but said nothing to the panel. Bianchi stated that the panel "still had two union men and two company men, that if they heard the evidence they would vote in my favor." Immediately after receiving the adverse panel result, Bianchi filed a complaint with the Union claiming that the two Union panel members were biased against him and had upheld his termination solely due to his Union politics.

not bring up his concerns about Marr's bias to the panel because he did not want to make the panel mad. Bianchi testified: "I figured there is no way they are going to take my job from me. I figure I would just let it [the bias] go."

The panel upheld Bianchi's termination.

## II. PROCEDURAL HISTORY

Thereafter Bianchi filed his hybrid Section 301 claim against Roadway and the Union in federal district court. Before trial, Roadway filed a motion *in limine* claiming that Bianchi had waived his argument that Marr was biased against him and had fixed the panel grievance hearing, by not raising this with the grievance panel itself. The district court denied the motion and the case proceeded for jury trial.

The jury held for Bianchi against both Roadway and the Union, finding: (1) that Roadway had terminated Bianchi without just cause in violation of the CBA; (2) that the Union had breached its DFR by Marr's handling of Bianchi's grievance proceedings arbitrarily, discriminatorily and/or in bad faith; and (3) that the Union's breach materially affected the outcome of Bianchi's grievance hearing.

Roadway then filed a motion for judgment as a matter of law, renewing its contention that Bianchi had waived his bad faith/bias argument, or, in the

alternative, a motion for new trial. The district court denied the motions without explanation and entered judgment for Bianchi in accordance with the jury's verdict.

This appeal follows.[7]

### III. ISSUES PRESENTED

A. Whether the district court erred by denying Roadway's motion for judgment as a matter of law because Bianchi had waived his objection of bad faith/bias by failing to raise it before his grievance panel, and therefore the evidence at trial was insufficient to support a jury finding that the Union had breached its DFR?

B. Whether the district court abused its discretion by refusing to grant Roadway's motion for a new trial on evidentiary grounds?

### IV. STANDARDS OF REVIEW

A. Judgment as a Matter of Law

A district court's denial of a defendant's motion for judgment as a matter of law is reviewed *de novo*, applying the same legal standard as the district court.

---

[7] Although the Union was initially a party to this appeal as well, it withdrew from the appeal via a motion to dismiss its appeal with prejudice. As the Union's breach is an element of Roadway's liability, Roadway can challenge the jury finding without the Union as a party on appeal.

*See Dade County, Fla. v. Alvarez*, 124 F.3d 1380, 1383 (11th Cir. 1997). The sufficiency of a hybrid Section 301 plaintiff's DFR allegations is a question of law that is also reviewed *de novo*. *See Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982). A ruling on the issue of waiver of arbitration is also reviewed *de novo*. *See Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1316 (11th Cir. 2002).

B. Motion for New Trial

We review the district court's denial of a motion for new trial for abuse of discretion. *See Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1463 (11th Cir. 1994).

## V. DISCUSSION

A. Judgment as a Matter of Law

1. Waiver

a. Bianchi's Contentions in General and as to Waiver

Bianchi claims that Marr's hostility towards him caused Marr to represent him at his grievance panel hearing in bad faith and in an arbitrary and discriminatory manner. *See Tedford v. Peabody Coal Co., et al.*, 533 F.2d 952, 957 (5th Cir. 1976) (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 577, 583-84 (6th Cir. 1994); *Thomas v.*

9

*United Parcel Service, Inc., et al.*, 890 F.2d 909, 923 (7th Cir. 1989). Bianchi

contends his hearing was a sham. *See Margetta v. Pam Pam Corp.*, 501 F.2d 179,

180 (9th Cir. 1974) (union breaches DFR when proceeding is essentially a sham).

Bianchi claims that the jury verdict is well supported by the substantial

record evidence and that Roadway is not entitled to judgment as a matter of law.[8]

As was discussed at oral argument, Bianchi claims essentially that Marr "lay down

on the job."

Bianchi argues that the evidence must be considered in the totality of the

circumstances. *See, e.g., Parker v. Connors Steel Co.*, 855 F.2d 1510, 1519-20

(11th Cir. 1988). He contends it was clear that Marr was acting in his own self

---

[8] Bianchi points to eleven instances of bad faith in the record: (1) that Marr canceled a meeting with another freight company because he had to "go through the motions of getting that motherfucker Bianchi" his job back; (2) that Marr attempted to convince Daniels to blame Bianchi for the mistaken date on Daniels' notice of injury form, in exchange for resolving Daniels' grievance in his favor, eliminating the need for a hearing; (3) that Marr instructed Daniels to lie to the grievance panel [about Bianchi's involvement]; (4) that Marr refused to entertain Bianchi's request that his and Daniels' grievances be heard together; even though they arose from the same factual circumstances and were heavily interdependent, Roadway's Terminal Manager wanted them heard separately; (5) that Marr refused to call live witnesses despite the fact that Bianchi requested that he do so, instead choosing to read witness statements into the record; (6) that Marr left it to Bianchi to do all the preparation work for the hearing; (7) that Marr twice put Bianchi's grievance packet together incorrectly; (8) that Marr never questioned Bianchi about a critical telephone conversation in which Daniels informed Bianchi that he had been injured on the job; (9) that Marr blamed Bianchi for Daniels' conduct during Daniels' hearing; (10) that when Bianchi attempted to put into the record evidence from Daniels' hearing, a Union panelist stopped him from doing so, and Marr did not object; and (11) that Marr made a false statement to the panel claiming that he did not know that Daniels had told Bianchi that he had been injured on the job.

10

interest, rather than in Bianchi's interest, during the grievance process. *See Ooley v. Schwitzer Div., Household Mfg., Inc. et al.*, 961 F.2d 1293, 1303 (7th Cir. 1992)(self-protectionist motives are not appropriate for fiduciaries and constitute sufficient evidence that the Union acted in bad faith); *see also Schoonover v. Consolidated Freightways Corp. of Delaware, et al.*, 147 F.3d 492, 496 (6th Cir. 1998); *Alicea v. Suffield Poultry, Inc.*, 902 F.2d 125, 132-33 (1st Cir. 1990) (misrepresentations by union representative can amount to arbitrary conduct).

Bianchi likens his case to *Achilli v. John J. Nissen Baking Co., et al.*, 989 F.2d 561 (1st Cir. 1993).[9] The *Achilli* court upheld a finding of bad faith against a Union in a hybrid Section 301 case. The plaintiff in *Achilli* cited a number of pieces of evidence indicative of bad faith, including that his union representative intentionally refused to present certain evidence to the panel. *Achilli*, 989 F.2d at 563-64.

In order to prove that this refusal to present certain evidence was not a DFR breach, the Union in *Achilli* pointed out that the plaintiff could have simply presented the missing evidence himself. *Id.* at 564. The court, through then-Chief

---

[9] Bianchi distinguishes his case from *Harris*, 668 F.2d at 1204, cited by Roadway, by arguing that the only issue in *Harris* was whether the union representative had represented the grievant in a perfunctory manner. There was no suggestion in *Harris* that there was deliberate obfuscation in the presentation of the grievant's case to the panel by the Union representative, or that there was a history of personal and political animosity between the two men.

Judge Breyer, held that "[t]he district court could reasonably find . . . that the Local's pressure, along with Achilli's dependence upon his representative at the hearing, make his failure to volunteer this information understandable, indeed, less than purely voluntary, and, therefore insufficient to absolve the Local of causal responsibility." *Id*.

Bianchi only spends two-and-a-half pages in his answer brief on the subject of waiver. He claims waiver is not present for two reasons.

Bianchi first contends that there is no waiver present in his case because his fear that he would "make the union part of the panel mad" excused him from bringing up the bias issue at his hearing. He claims he had no reason to believe that the panel was "fixed" prior to the date of the hearing. Bianchi argues that, at best, he testified that he had some trepidation about a particular panelist because he "used to be Roadway's labor man . . . me and him never got along good." Bianchi also contends that the presence of that particular panelist did not cause him to believe that he could not get a fair hearing. Instead, he testified that "[w]e still had two union men and two company men, [ans so I thought] that if they heard the evidence they would vote in my favor."

Bianchi's second reason that waiver is not present in his case is because he did not realize Marr's bad faith until it "dawned on him" *after* he lost the panel

12

hearing. When asked at trial what made him believe that he did not get a fair hearing, Bianchi pointed to Marr's conduct at the hearing. He admitted his suspicion, that, *in hindsight*, he felt that the proceeding had been fixed from the beginning. Bianchi claims that this suspicion "*reflects an appreciation of events which followed the Panel hearing and dawned on [him] only after he sat down, thought about it, and put it all together . . . .*"

b. Roadway's Contentions as to Waiver

Roadway argues that Bianchi waived his bad faith argument by failing to raise it with the grievance panel itself. Roadway contends that all the facts relevant to the issue of bad faith/bias were known to Bianchi at the time of the hearing, and that he cannot sit mute and later object to an adverse ruling on that basis. His silence constitutes a waiver of the objection.

In its attempt to establish Bianchi's waiver, Roadway cites to Bianchi's deposition in which he admits that he believed that his hearing was fixed from the beginning.[10] It also highlights that Bianchi filed a protest to the proceeding, claiming that the Union panel members were politically biased against him, on the same day of but after the adverse decision, demonstrating that Bianchi had always

---

[10] As Bianchi's deposition was put in the record as an exhibit to Roadway's motion for summary judgment, it was never admitted at trial and can only be examined in the context of waiver, not sufficiency of the evidence.

thought his hearing was fixed and merely held that issue as his trump card, for later assertion in the event of an adverse decision.

On the issue of waiver, Roadway relies principally on a First Circuit case, *Early v. Eastern Transfer*, 699 F.2d 552 (1st Cir. 1983). In *Early*, the First Circuit considered whether two hybrid Section 301 plaintiffs could argue bad faith by the Union. In upholding summary judgment for the defendant, the *Early* court refused to consider the plaintiffs' bad faith/bias argument because of the plaintiffs' "failure to have raised the issue of [the union representative's] purported bias before the joint committee." *Early*, 699 F.2d at 558. In *Early*, the biased person was a union representative on the panel.

The *Early* court determined that, "[i]n the absence of exceptional circumstances, we will not entertain a claim of personal bias where it could have been but was not raised at the hearing to which it applies. This is the accepted rule in arbitration cases." *Id*. (citing *Amalgamated Meat Cutters v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113, 1121 & n.19 (3d Cir. 1975); *Morris v. Werner-Continental, Inc.*, 466 F.2d 1185, 1189 (6th Cir. 1972); *Cook Industries, Inc. v. C. Itoh Co.*, 449 F.2d 106, 107-08 (2d Cir. 1971) *cert. denied*, 405 U.S. 921 (1972); *Graphic Arts Int'l Union, Local 97-B v. Haddon Craftsmen, Inc.*, 489 F.Supp. 1088, 1093 (M.D.Pa. 1979)).

14

This principle has also been applied in a hybrid Section 301 case to a biased Union representative in Marr's position. *See Hazard v. S. Union Co.*, 275 F.Supp.2d 214, 225 n.13 (D.R.I. 2003) (plaintiff waived his argument that his Union representative was biased against him "because he knew of the alleged bias at the time of the arbitration and failed to raise it during that proceeding"). Finding no Eleventh Circuit case directly on point, Roadway asks that we follow the rationale of the First Circuit in *Early* and the Rhode Island district court in *Hazard* on the issue of waiver present in this appeal.

### 2. Waiver Analysis

In the context of a hybrid Section 301 cause of action, the Supreme Court has explained that courts should "not undertake to review the merits" of the underlying grievances, "but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976) (internal quotation marks omitted). If a Union member fails to utilize the grievance procedure under the CBA to air his grievances, then a district court should not allow him to make such arguments for the first time. *See id.* ("[U]nless he attempted to utilize the contractual procedures for settling his

dispute with his employer, his independent suit against the employer in the District Court would be dismissed.").

The burden is on Roadway to prove waiver. *See e.g., Lambert v. Travelers Fire Ins. Co.*, 274 F.2d 685, 687-88 (5th Cir. 1961). In order to do this Roadway must show that Bianchi had "full knowledge of the fact" underlying his bias claim. *See Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1204 (11th Cir. 1982) ("Waiver applies only where a party has acted with full knowledge of the facts."); *but see University Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1340-41 (11th Cir. 2002) (finding no waiver of the argument that the arbitrator was biased where the arbitrator did not disclose all of the information revealing the "extensive nature" of the relevant interactions suggesting bias).

Most courts suggest, however, that, where the bias is apparent enough, waiver will occur. *See United Steelworkers of America Local 1913 v. Union R. Co.*, 648 F.2d 905, 913 (3d Cir. 1981) ("When the reasons supporting an objection are known beforehand, a party may not wait to make an objection to the qualifications of a Board member until after an unfavorable award has been made."); *Hazard*, 275 F.Supp.2d at 225 n.13. This interpretation is the better-reasoned view. If merely adding additional facts to a bias claim were enough to avoid waiver, then waiver could be easily avoidable.

16

We find *Early* to be persuasive in this case. The key to the ruling in *Early*, as is true in Bianchi's case, was that "[a]ll the facts now argued as to [the committee member's] alleged bias were known to [the plaintiffs] at the time the joint committee heard their grievances. Had the [plaintiffs] objected, [the committee member] might have withdrawn in favor of some other union official." *Early*, 699 F.2d at 558. Additionally, just as occurred in Bianchi's case, "at the conclusion of the hearing [the Earlys] expressly stated that they had been properly represented" by the Union. *Id.* Rejecting the type of argument that Bianchi is attempting to assert here, the First Circuit reasoned that:

> While it may be unpleasant to have to choose between possibly alienating a decisionmaker in advance by objecting and waiving the issue of bias, we cannot accept that parties have a right to keep two strings in their bow – to seek victory before the tribunal and then, having lost, seek to overturn it for bias never before claimed.

*Id.*; *accord United Steelworkers,* 648 F.2d at 913; *Swift Independent Packing Co. v. District Union Local One, United Food and Commercial Workers Int'l Union*, 575 F.Supp. 912, 916 (N.D.N.Y. 1983) (finding waiver present in a Section 301 case where "plaintiff made a calculated decision not to object to the alleged bias of [an arbitrator]" because he wanted to avoid alienating the arbitrator); *Haddon Craftsmen, Inc.*, 489 F.Supp. at 1093 (it is well settled that "a party may not await an adverse award before asserting objections on grounds of which he had

17

knowledge prior to the award").

The *Early* court held that the plaintiffs had waived their bad faith/bias theory and thus it "could not look behind" the joint committee's award on that basis. *Early*, 699 F.2d at 559; *Hazard*, 275 F.Supp.2d at 225 n.13. *Early* and *Hazard* strongly support Roadway's waiver argument.

Bianchi's response to Roadway's waiver argument is weak and contradictory. The case he principally relies on, *Achilli*, does not squarely address the issue of waiver. The *Achilli* court was discussing the DFR issue in the context of whether the evidence supported the finding that the Union breached its DFR, not as to whether the DFR argument was waived.[11]

In Bianchi's first rationale of excuse, he claims that there is no waiver present in his case because his fear that he would make the union part of the panel mad excused him from bringing up the bias issue at his hearing. *Early* is clearly on point.[12] Excuse is not enough. *See Early*, 699 F.2d at 558 ("While it may be unpleasant to have to choose between possibly alienating a decisionmaker in

---

[11] In fact, the *Achilli* court never used the word "waiver" or "estoppel." Both *Achilli* (1993) and *Early* (1983) are First Circuit cases, yet *Achilli* neither references *Early* nor discusses the waiver rules set forth therein.

[12] Waiver is more apparent in Bianchi's case than in *Early*. In *Early* there were "no actions or remarks by [the union representative] showing overt hostility or less than conscientious performance of duty." *Early*, 699 F.2d at 559.

18

advance by objecting and waiving the issue of bias, we cannot accept that parties have a right to keep two strings in their bow.").[13]

Bianchi's second rationale of hindsight, that he did not realize Marr's bad faith until it "dawned on him" after he lost the panel hearing, this is not supported by the record. The record reflects that Bianchi admitted at trial that at the hearing he believed Marr was only "acting" as though he was representing him. It is also abundantly apparent that Marr's personal and political animosity, suggesting bad faith and bias, were well-known to Bianchi before the adverse decision by the grievance panel. Despite learning and being advised before the panel hearing that Marr was fixing the hearing against him and only going through the motions of helping him, Bianchi still purposely elected not to bring the subject of bias and bad faith up at the hearing "because he did not have the evidence in writing" and he did not want to make the panel mad.

Thus, Bianchi "made a calculated decision not to object to the alleged bias." *See Swift Indep. Packing*, 575 F.Supp. at 916. In doing so, he lost the right to keep

---

[13] When a grievance panel member asked Bianchi if he had presented all of the hearing evidence in his favor, and, if he had been properly represented, he answered yes to both questions. During cross-examination at trial, Bianchi admitted that this had been a lie, and that he then thought that Marr and a panel member were biased, and dead set against him. Bianchi testified at trial that he did not raise the issue of bias at the hearing because he did not want to anger the panel. He testified: "I figured there is no way they are going to take my job from me. I figure I would just let it [the bias] go."

19

two strings in his bow. *Early*, 699 F.2d at 558. Waiver is present and the evidence is insufficient therefore to support the jury verdict.

B. Motion for New Trial

Based upon our conclusion that Roadway is entitled to judgment as a matter of law, we need not reach the second evidentiary issue.

## VI. CONCLUSION

Based on the foregoing, Bianchi waived his objection of bad faith/bias by failing to raise it before his grievance panel. Therefore the evidence at trial was insufficient to support a jury finding that the Union had breached its DFR. We VACATE the jury verdict in favor of Bianchi and GRANT JUDGMENT AS A MATTER OF LAW for Roadway.

**JURY VERDICT FOR BIANCHI VACATED; JUDGMENT AS A MATTER OF LAW FOR ROADWAY GRANTED.**