[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-12501
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 30, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-02896-CV-UWC-S

GEORGE JOHNSON,

                                              Plaintiff-Appellant,

                        versus

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ALABAMA,
BROOKS BAKER, in his official
and in his individual personal
capacity,
WILLIAM A. COPE, in his official
and in his individual personal
capacity,
JOHN COOK, in his official and
in his individual personal capacity,

                                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

**(June 30, 2006)**

Before EDMONDSON, Chief Judge, KRAVITCH, Circuit Judge, and MIDDLEBROOKS[*], District Judge.

KRAVITCH, Circuit Judge:

In this employment discrimination action, appellant George Johnson appeals the district court's grant of the summary judgment motion of the appellees, the Board of Trustees of the University of Alabama, Brooks Baker, William A. Cope, and John Cook, on Johnson's retaliation claim and the district court's grant of appellees' Rule 50 motion for judgment as a matter of law on Johnson's disparate treatment and disparate impact claims. After oral argument and a thorough review of the record, we affirm the judgments of the district court.

I.

George Johnson, an African-American, began working at the University of Alabama at Birmingham ("UAB") in 1981 as a messenger. Johnson applied for and received promotions to new jobs several times during the 1980s.

In January 1988, a class action complaint was filed against UAB alleging that black employees in the Facilities Management Department had been discriminated against on the basis of race in promotion and other terms and conditions of employment. This action, known as the *Woods* litigation, ended in

---

[*]Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of Florida, sitting by designation.

November 1990 when the parties negotiated a Consent Decree, signed by the same district judge who presided in this case, Judge Clemon. The Decree was set to expire in three years. As a result of the decree, Johnson got a job as a Central Plant Repairer. Although the Decree did not expire in three years, the district court found that UAB had substantially complied with the Decree by 1995, and it was dismissed in 1999.

In 1991, Johnson applied for a promotion to Central Plant Operator and was denied. He then filed an EEOC claim, a separate lawsuit, and a motion to show cause. Brooks Baker, currently Associate Vice President for Facilities and then Executive Director of Facilities Management, testified against Johnson at the show cause hearing. The Decree provided that UAB's internal promotion procedure was to be used for the purpose of promoting "incumbent employees who satisfy the minimum qualifications defined in the job description for a vacant position or are otherwise qualified." The court found that UAB violated the Decree by not considering whether Johnson was "otherwise qualified," even though he did not meet the minimum standards. The court awarded Johnson the position and backpay.

In 1998, Johnson applied for and was promoted to Materials Control Specialist. The requirements listed in the job description included a minimum of

4,000 hours of verifiable on-the-job training for the classification or equivalent verifiable experience. Johnson did not have the required on-the-job training, but the Energy Systems Director, William Odom, declared him "otherwise qualified" based on his work in UAB's supply room and training received at Office Depot.

On or about October 30, 2000, Johnson applied for the Materials Procurement Specialist/Expediter ("MPSE") position, which is the position at issue in this case. The job was posted internally on October 25, 2000, and Johnson applied along with three other internal candidates, a white male, a Hispanic male, and a black male. The job position listed the requirements as follows:

Education: An accredited four (4) year bachelor degree in business or related field. Three (3) years verifiable experience in material procurement or expediting may be substituted for two (2) years of college.

Experience: A minimum of three (3) years experience in material procurement and expediting maintenance and construction materials at similar facilities.

Personal: Possess a Driver's License valid in the State of Alabama.

**NOTE: BEST QUALIFIED APPLICANT WILL BE CHOSEN.**

The internal applications went directly to the Human Relations Department where they initially were reviewed by Allen Kennedy. On November 7, 2000,

4

Kennedy determined that none of the internal applicants met the educational and/or experience requirements and forwarded the application packets to the Facilities Management Department for further review pursuant to department policy. Hope Hammonds, Director of Design Build Services, reviewed the applications, and along with John Cook and Willie Smith, interviewed the four internal applicants in late November. Each applicant was asked the same questions and Johnson received a score of 9.5/18.

Regarding the educational requirement, Johnson attended Kentucky State University from fall 1976 to spring 1981 and earned 92 hours (which Johnson claims was equal to three years) toward a Sociology degree. The only business-related course he took was a principles of economics class, in which he received a "D." Regarding the experience requirement, he was credited with two years and ten months of experience.

On May 21, 2001, Hammonds sent a memo to Janet Cunningham, the Divisional Personnel Officer, with a brief analysis of each internal applicant and noted that none of the applicants met the minimum requirements described in the job description. William Cope then reviewed Hammonds's memo and made the decision to conduct an external search to fill the vacancy.

On April 26, 2001, Ronald Barnes, an African-American, applied for the

position and ultimately was awarded the job. Barnes had a bachelor of science degree and an MBA degree from UAB and had over twenty-two years of experience in materials procurement.

On November 8, 2001, Cook notified Johnson that he did not get the job in a letter that stated: "After careful review, it was determined that you do not meet the qualifications, per the attached job description, nor were you otherwise qualified." The letter was drafted by Hammonds and signed by Cook.

Johnson then filed this suit against the Board of Trustees of the University of Alabama, Brooks Baker, William Cope, and John Cook, alleging a violation of Title VII and 42 U.S.C. §§ 1981 and 1983 for race discrimination in promotion and terms and conditions of employment and retaliation. Both parties filed motions for summary judgment. The district court found that the Board of Trustees was entitled to qualified immunity and granted summary judgment for the § 1983 claims, but found that Baker, Cope, and Cook were not entitled to qualified immunity and denied their motion for summary judgment for the § 1983 claims. The court also denied the cross-motions for summary judgment on Johnson's disparate impact and disparate treatment claims under Title VII and granted the appellees' motion for summary judgment on Johnson's retaliation claim. In its brief order, the court did not provide any reasons for its decisions.

6

The case proceeded to a jury trial on the disparate treatment claim and a bench trial on the disparate impact claim. At the close of Johnson's evidence, the district court granted the appellees' Rule 50(a) motion for judgment as a matter of law on those remaining claims. The district court explained that Johnson failed to prove a prima facie case for disparate treatment, and even if he had, the appellees proffered a legitimate, nondiscriminatory reason and Johnson could not show that it was pretext for racial discrimination. With respect to the disparate impact claim, the district court held that the "Defendant has carried its burden of proof that it would have made the same decision on Plaintiff's disparate impact claim." Johnson then timely filed this appeal.

## II.

A district court's grant of summary judgment is reviewed de novo. *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238, 1243 (11th Cir. 2004). We view the evidence and make all factual inferences in the light most favorable to the nonmoving party. *Id.*

We review de novo the district court's grant of a motion for judgment as a matter of law, applying the same legal standard as the district court. *Bianchi v. Roadway Express, Inc.*, 441 F.3d 1278, 1282 (11th Cir. 2006).

III.

A.

As an initial matter, Johnson argues that this court should remand or reverse because the district court did not make findings of fact or conclusions of law when it granted summary judgment on the retaliation claim. Although it would have been preferable to have the district court's reasoning before us, especially in a case like this involving shifting burdens, in this case it is not fatal. Findings of fact and conclusions of law are not required for motions for summary judgment or for the entry of judgment as a matter of law in a jury trial, Fed. R. Civ. P. 52(a); *see Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1287 (11th Cir. 2005), and the record here is sufficient for us to proceed.

B.

Johnson argues that the district court erred in granting the appellees' motion for summary judgment on Johnson's retaliation claim, which stemmed from the claims he filed in 1992 when he was denied a promotion to Central Plant Operator. Title VII prohibits an employer from retaliating against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. "In order to establish a prima facie case of retaliation under Title VII, a

8

plaintiff must prove the following elements: (1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the defendant succeeds, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason was pretext for discrimination. *Id.*

We conclude that the district court properly granted summary judgment because Johnson failed to establish a prima facie case. Specifically, Johnson failed to show that there was a causal connection between the protected activity and the adverse employment decision where nine years had passed between the time Johnson filed his EEOC claim, lawsuit, and motion to show cause in 1992, and the denial of promotion in 2001. Moreover, Johnson received a promotion to Materials Control Specialist in 1998.

### C.

Johnson next argues that the district court erred in granting the appellees'

Rule 50 motion for judgment as a matter of law on his disparate treatment claim. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000-2(a)(1). In order to establish a prima facie case of disparate treatment in the failure-to-promote context, a plaintiff must show that (1) he is a member of a protected class; (2) he applied and was qualified for the promotion; (3) he was rejected in spite of his qualifications; and (4) the employer promoted an individual outside of the plaintiff's protected class, or else continued to attempt to fill the position. *Walker v. Mortham*, 158 F.3d 1177, 1193 (11th Cir. 1998); *Crawford v. W. Elec. Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980); *Bernstein v. Sephora, Div. of DFS Group L.P.*, 182 F. Supp. 2d 1214, 1221 (S.D. Fla. 2002). "[I]f the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1162 (11th Cir. 2006). If the defendant is successful, the burden shifts back to the plaintiff, who must show that the employer's proffered reason is pretext for discrimination. *Id.* We conclude that the district court properly granted the motion for judgment as a matter of law because Johnson did not carry his burden in proving a prima facie case, nor did he

10

succeed in showing pretext.

D.

Johnson then argues that the district court erred in granting the appellees' Rule 50 motion for judgment as a matter of law on his disparate impact claim when it found that the appellees carried their burden of proof that they would have made the same employment decision. Disparate impact claims brought pursuant to Title VII seek to show that facially neutral employment practices have significant adverse effects on protected groups, even in the absence of proof that the practice was adopted with discriminatory intent. To establish a prima facie case of disparate impact, a plaintiff must show that "(1) there is a significant statistical disparity among members of different racial groups; (2) there is a specific, facially-neutral employment policy or practice; and (3) there is a causal nexus between the specific policy or practice and the statistical disparity." *Cooper v. S. Co.*, 390 F.3d 695, 724 (11th Cir. 2004). If the plaintiff establishes a prima facie case, the employer can then respond with evidence that the challenged practice is both related to the position in question and consistent with business necessity. *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1314 (11th Cir. 1999). "However, even if the defendant satisfies this burden, a plaintiff may still prevail by proving that an alternative, non-discriminatory practice would have served the defendant's stated

objective equally as well." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1275 (11th Cir. 2000).

Even if the court ultimately finds that the employer has violated the disparate impact provisions of Title VII, the plaintiff still must prove individual harm: "[I]f an individual plaintiff has shown that he or she was within the class of persons negatively impacted by the unlawful employment practice, then the employer must be given an opportunity to demonstrate a legitimate nondiscriminatory reason why, absent the offending practice, the individual plaintiff would not have been awarded the job or job benefit at issue anyway." *In re Employment Discrimination Litig. Against the State of Ala.*, 198 F.3d 1305, 1315 (11th Cir. 1999); *see also Stephen v. PGA Sheraton Resort, Ltd.*, 873 F.2d 276, 278-79 (11th Cir. 1989). Here, we agree with the district court that, even if the appellees' policy violated Title VII, the appellees would have made the same employment decision.[1]

V.

For the foregoing reasons, we AFFIRM the judgments of the district court. AFFIRMED.

---

[1] In so holding, we express no opinion on whether Johnson established a prima facie case or whether, if he did, the appellees proved that the education requirement was justified as a business necessity.